GREGORY A. BROWER
United States Attorney
Nevada Bar No. 5232
MICHAEL A. HUMPHREYS
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Facsimile: (702) 388-6787
E-mail: Michael.Humphreys@usdoj.gov
Counsel for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> $999,830.00 IN UNITED STATES ) <br> CURRENCY, ) <br> ) <br> Defendant. ) | 2:09-CV-86-KJD (GWF) |

**GOVERNMENT'S REPLY MEMORANDUM TO MICHAEL SIMARD'S OPPOSITION TO THE <u>GOVERNMENT'S MOTION TO STRIKE SIMARD'S CLAIM</u>**

In its motion to strike Michael Simard's (hereinafter, "Simard") claim, the Government argued that this Court lacks subject matter jurisdiction because Simard had expressly disclaimed both interest in and knowledge of the monies found in the trunk of his rental car. As such, Simard lacks the necessary Article III standing that would create a 'case or controversy' that would, in turn, imbue this Court with subject matter jurisdiction. *See Government's Memorandum of Points and Authorities in Support of Its Motion To Strike the Claim of Michael Simard* (Docket Entry No. 13)(cases cited at pages 8 through 14)(hereinafter, "Gov't. Mem.")

Simard completely ignores the Government's jurisdictional argument; never even using the word "jurisdiction" throughout the entirety of his brief. Given that, we think that a fair argument

. . .

can be made that Simard has conceded that point. *Stephenson v. Cox,* 223 F. Supp. 2d 119, 121 (D.D.C. 2002)(specific arguments not responded to in a motion are conceded even if the result is a dismissal of the case). Nevertheless, we address each of Simard's arguments, and their respective lack of merit.

### A. Simard Was Not Coerced Into Signing The Disclaimer

Simard alleges, in the most conclusory terms, that he was coerced into signing the disclaimer form. *See Opposition By Michael Simard to the Government's Motion to Strike the Complaint [sic],* p. 3 (hereinafter, "Simard Mem.") His contention is woefully inadequate under existing case law. The issue of whether consent has been given within the context of a particular police action is based upon the totality of the circumstances surrounding that consent. *See Schneckoth v. Bustamonte,* 412 U.S. 218, 227 (1973); *United States v. Brown,* 563 F.3d 410, 415 (9th Cir. 2009); *United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir. 1988). The Government has the burden of proving that consent was freely given. *United States v. Patayan Soriano,* 361 F.3d 494, 501 (9th Cir. 2004). Finally, relevant to this case, execution of a consent form is a factor that this Court should consider in determining whether consent was voluntary. *United States v. Rodriquez,* 464 F.3d 1072, 1078 (9th Cir. 2006).

The *Castillo* court established the following criteria as guidelines that a trial judge should consider in determining whether consent was freely given:

- whether the subject is in custody;
- whether the officers on the scene brandished; weapons;
- whether *Miranda* warnings were given;
- whether the subject was advised of his right to refuse consent; and
- whether the subject was told a warrant could be obtained.

*see United States v. Castillo, supra,* at 1082*; accord, United States v. Brown, supra,* at. *415*

None of listed factors is dispositive on the issue of voluntariness and the fact that "some of the factors are not established does not automatically mean that consent was not voluntary." *Id; see also United States v. Brown, supra at 415* ("[The foregoing] factors serve merely as guideposts, not . . .

as a mechanized formula to resolve the voluntariness inquiry. Moreover, no one factor is determinative." (Citations omitted).

Simard's claim of coercion patently fails in light of the criteria established by *Castillo-Brown.*

**Subject in Custody:** Simard was never in custody, as evidenced by the fact that he was allowed to leave the scene after the police discovered the money. *See Declaration of Eric Kemmer, ¶ 21; attached to the Gov't. Mem. as Exhibit No. 1 (hereinafter, "Kemmer Dec.").* In addition, just before the police requested that Simard allow them to search the car, they told him he could leave. He voluntarily remained on the scene in response to a police request for additional information. Moreover, when Simard declined the officers' invitation to travel to the police station to continue the investigation, he was allowed to leave with no repercussions. Finally, even Simard does not claim anywhere in his brief that he was in custody during the stop.

**Weapons Displayed:** The officers never displayed or brandished weapons. *Kemmer Dec., ¶ 17.* Kemmer further states that throughout the encounter, the officers conducted themselves in a professional manner; and discussions were maintained in a conversational tone. Simard apparently agrees that the police conducted themselves professionally and never displayed any weapons, since he does not state otherwise in his memorandum or accompanying declaration; a matter he would likely have highlighted as significant to his claim of coercion, had such a circumstance occurred.

**Miranda Warnings:** Because Simard was never under arrest there was no need for the officers to advise him of his *Miranda* rights. *California v. Beheler,* 463 U.S. 1121, 1122-1123 (1983); *United States v. Crawford,* 372 F.3 1048 (9th Cir. 2004)("An officer's obligations to administer *Miranda* warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him 'in custody'" *Id.* at 1059 (citation omitted)

. . .

. . .

**Notice of Right To Refuse:** The consent to search form that Simard signed specifies, *in writing,* that he had a right to refuse to consent to a search of the car. *Kemmer Dec., Att. Exh. No. 2.*

**Notice of Police Ability To Obtain a Search Warrant:** There was no need to advise Simard that a warrant could be obtained since Simard consented to the search.

In summary, Simard has failed to show how his execution of the disclaimer form was coerced under the guidelines set forth in *Castillo-Brown.* To the contrary, Officer Kemmer has stated that the police acted professionally throughout the length of their encounter with Simard. And nothing in Simard's brief or declaration disputes that point.

What Simard does say about the circumstances of his encounter with the police hardly rises to the level of "coercion."

In support of his claim that he was "coerced" Simard makes the following points in his declaration:

"I *felt* coerced into signing the declaration form."

"I *felt* threatened in that I would be arrested, if I did not sign the disclaimer form; but that if I signed the disclaimer I would be released." (emphasis added)

The obvious problem with these statements is that they are vague, amorphous descriptions of Simard's supposed state of mind. Essentially, what Simard is asking this Court to do is to invalidate the consequences of a professionally-conducted traffic stop; as well as the substance of a signed consent to search and a separate disclaimer based on his *feelings*.[1]

. . .

---

[1] In making this argument, we do not intend to suggest that a circumstance could never arise wherein a detained motorist might "feel" intimidated by police conduct to act in a certain manner. But at a minimum that subject would have to establish that the circumstances of his stop met all, or most, of the criteria set forth in *Castillo-Brown.* Whereas here, Simard cannot point to any evidence that supports a single element of that test, his *feelings* are decidedly at odds with established legal precedent.

Apparently recognizing the ephemeral character of the word "felt," Simard employs the use of harder verbs in the other sentences in his declaration:

"I was *directed* to sign a disclaimer form by law enforcement" and

"I was *advised* as to the phraseology and words to be included on the disclaimer form." (emphasis added)

But even these relatively concrete expressions are completely conclusory and are unsupported by facts; but most importantly, the use of these words, even if true do not implicate any of the elements of *Castillo-Brown*.[2]

Finally, if Simard is allowed to prevail on his argument, any defendant could, upon later reflection, invalidate an otherwise legitimate consent search by asking the Court to take into account his *feelings* or conclusory allegations of police misconduct at the time; and, in so doing, undermine the efficacy of an important law enforcement tool. Adopting that position would take the issue of what constitutes *voluntariness* well beyond the parameters of any precedent, specifically *Castillo-Brown,* that has been established in this Circuit.

**B. Simard Is Not Entitled to an 'Evidentiary Hearing,' a Suppression Hearing or Discovery**

Simard seeks to prolong this litigation even though it is ripe for disposition now. Specifically, Simard alternatively petitions this Court to: a) conduct an 'evidentiary hearing' (p. 3); b) a suppression hearing (p. 5); and c) allow discovery (p. 3). He is entitled to none of these processes.

---

[2] Simard's voluntariness argument is, similarly, illogical because although he swears under oath that the police 'coerced' him to sign the disclaimer he says nothing at all about being forced to sign the consent to search form. Therefore, he impliedly concedes that his execution of the consent to search form was voluntary. Which begs the obvious question: Why would the police "coerce" Simard to sign one form and not the other? We submit that this lopsided contention is another factor that detracts from the logic of Simard's overall claim of police improbity as regards his execution of the disclaimer.

The Government bases its motion to strike on Fed. R. Civ. P, Rules 12 (b)(1) and G (8)(c)(Supp. Rules). As we explain in greater detail in our opening brief and recite only briefly here, Simard lacks Article III standing to participate in this litigation, because he can show no *facially colorable interest* in the seized assets. (*Gov't. Mem.,* pp. 8-14). Furthermore, when a jurisdictional challenge is raised as the Government has done here, this Court can consider materials that are extraneous to the pleadings, such as the Declaration of Eric Kemmer that the Government filed with its motion, if the purpose of those materials is to resolve the jurisdictional dispute. *See Gov't. Mem., p. 3, fn. 1*

In this case, Kemmer's declaration is used solely as a medium for getting the "Consent To Search" and the "Disclaimer" forms that Simard signed before this Court. Those signed documents go to the very heart of the Government's claim that Simard has no *facially colorable interest* in the defendant *res*. As such, Simard has no right to participate in this litigation. Furthermore, no discovery is needed to resolve this case since Simard has already admitted that he signed the Disclaimer; the most crucial fact for this Court to consider in ruling on the Government's motion to strike. Moreover, as already argued above, Simard cannot legitimately allege that he was coerced since he does not offer any evidence to support even a single factor of police misconduct that would bring him within the sphere of the *Castillo-Brown* test.

**C. The Cases Cited by Simard**

The cases that Simard cites in his opposition memorandum do nothing to advance his cause.

Simard highlights two cases that discuss Fed. R. Crim. P., Rule 41(g): *United States v. Ibrahim,* 522 F.3d 1003 (9th Cir. 2008) and *United States v. Ritchie,* 342 F.3d 902 (9th Cir. 2003). Neither the holding of those cases nor the substance of the rule have application in this forfeiture action.

By its very terms, Rule 41(g) offers a mechanism for a person "aggrieved by an unlawful seizure" to seek a court order compelling the Government to return the property. However, a Rule 41 motion is an inappropriate mechanism to challenge a seizure once a forfeiture action has been

commenced, because at that point the "aggrieved" party has an adequate remedy at law. *United States v. Sims,* 376 F.3d 705, 708 (7th Cir. 2004). Simard's discussion of whether a Rule 41 motion should be treated as a motion for summary judgment, as he highlights in his analysis, is beside the point. The Government filed its motion in this case under the auspices of Fed. R. Civ. P, Rules 12 (b)(1) and G (8)(c)(Supp. Rules), which expressly authorizes the Government to file a motion to strike when, as here, the person seeking claimant status lacks standing.

### Conclusion

Simard has no standing to contest this forfeiture. And his lack of standing is a product of his own words and actions when he was stopped by the police on the evening of August 7, 2008. Those actions and representations were consistent with that of a courier whose first instinct was to minimize his involvement and get as far away as possible as quickly as possible.

Now that the drama of that episode is behind him, Simard petitions this Court for a mulligan; a do-over. He didn't really intend to abandon a lifetime worth of currency as he did. He was cowed into submission by the police. But that fanciful explanation is nonsensical in light of the fact (and law) that ***possessing currency, in any quantity, is not a crime;*** which is amply demonstrated by the fact that Simard was allowed to leave the scene*.* Thus, Simard had no reason to fear arrest or police retribution as he claims. In summary, his behavior that night defies all logic unless, of course, he was operating as a courier, who didn't want to answer uncomfortable questions about the source and/or ownership of the funds.

But if Simard's position is crippled by logic, it is completely undone by legal precedent. Simply put, Simard's claim of coercion is unsupported by a single fact of alleged police impropriety. And his failure to satisfy even a single element of the *Castillo-Brown test* eviscerates his claim that he was coerced into executing the disclaimer.

. . .

. . .

. . .

7

1     In summary, the United States' Motion to Strike Simard's claim is well-positioned in law and fact; and nothing that Simard has offered in his opposition memorandum diminishes, in the least, the Government's entitlement to the relief that it seeks. As such, the United States re-iterates its request that this Court GRANT the United States' Motion To Strike the Claim of Michael Simard.

Dated: this 30th day of July, 2009.

                      Respectfully submitted,

                      GREGORY A. BROWER
                      UNITED STATES ATTORNEY

                      /s/MichaelAHumphreys
                      MICHAEL A. HUMPHREYS
                      ASSISTANT UNITED STATES ATTORNEY

**CERTIFICATE OF SERVICE**

I, Maliece Troth, certify that the following individuals were served with copies of the **GOVERNMENT'S REPLY MEMORANDUM TO MICHAEL SIMARD'S OPPOSITION TO THE <u>GOVERNMENT'S MOTION TO STRIKE SIMARD'S CLAIM</u>** on July 30, 2009 by the below identified method of service:

<u>E-mail/ECF</u>

Ronald N Richards
Ronald Richards & Associates
P.O. Box 11480
Beverly Hills , CA  90213
Pro Hac Vice
Email: ron@ronaldrichards.com

T. Louis Palazzo
Goodman Law Group
520 S 4th Street
Second Floor
Las Vegas , NV  89101
Email: louis@palazzolawfirm.com

/s/Maliece Troth
Maliece Troth
Forfeiture Support Associate Paralegal