**MOT**
T. LOUIS PALAZZO, ESQ.
Nevada Bar No. 4128
PALAZZO LAW FIRM
A PROFESSIONAL CORPORATION
520 South Fourth St, Second Floor
Las Vegas, Nevada 89010
Tele: (702) 385-3850
Fax: (702) 385-3855

RONALD RICHARDS, ESQ. #176246
LAW OFFICES OF RONALD RICHARDS & ASSOC., A.P.C.
P.O. Box 11480
Beverly Hills, CA 90213
Tel: (310) 556-1001
Fax: (310) 277-3325
email: ron@ronaldrichards.com

*Attorneys for Claimant Michael Simard*

# UNITED STATES DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> $999,830.00 IN UNITED STATES CURRENCY <br><br> Defendant. | CASE NO.: 2:09-CV-86-KJD(GWF) |

### MOTION FOR RECONSIDERATION PURSUANT TO FRCP 59(e) and 60(b)

Claimant, MICHAEL SIMARD, by and through his attorneys of record, hereby submits his Motion for Reconsideration of the Order of the District Court of Nevada dated March 12, 2010.

---

**MOTION FOR RECONSIDERATION**
1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On January 13, 2009, the Plaintiff filed its complaint for forfeiture against $999,830.00 IN UNITED STATES CURRENCY.  On July 17, 2009, MICHAEL SIMARD, the Claimant in this proceeding ("Claimant"), filed a claim opposing forfeiture and an answer to the Government's complaint for Forfeiture.  The government then filed a 12(b) motion to strike the claim and answer based on a failure to establish article III standing.  The claimant then provided a signed declaration under penalty of perjury as well as the previously filed claim opposing forfeiture under oath claiming a 100 percent legal interest in the currency.  On March 12, 2010, the Court issued its order granting the government's motion, holding that Claimant had not met his burden under Article III's standing requirements because "he has produced no persuasive evidence other than mere possession." (Court's Order, 3/12/10, page 3 lines 6-7.)  In reaching its decision, the Court also determined that the Claimant's assertions that he felt coerced (*Simard Declaration*) were nothing but "vague assertions". (Order, 4:22.)

The Claimant respectfully submits the following points and authorities in support of his reconsideration motion to demonstrate why the Court should reconsider its March 12 Order.

**II.  THE COURT HAS THE DISCRETION TO GRANT
THIS EXTRAORDINARY RELIEF UNDER F.R.C.P. 59(e) and 60(b)**

Claimant seeks reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). The disposition of a motion for reconsideration is within the discretion of the district court. *Lolli v. County of Orange,* 351 F.3d 410, 411 (9th Cir.2003); *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir.2003). "A party may ask the court to reconsider and amend a previous order pursuant to Federal Rule of Civil Procedure 59(e)." *White v. Sabatino,* 424 F.Supp.2d 1271, 1274 (D.Haw.2006).

Rule 59(e) provides that any motion to alter or amend a judgment shall be filed no later than ten days after entry of the judgment. Fed.R.Civ.P. 59(e). The Court, in its discretion, shall

grant this "extraordinary remedy" only upon (1) a demonstration of some reason why the court should reconsider its prior decision and (2) presentation of "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* Furthermore, "[m]ere disagreement with a previous order is an insufficient basis for reconsideration." *White,* 424 F.Supp.2d at 1274.

Federal Rules of Civil Procedure 60(b) provides that the court may grant relief from judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Claimant's motion should also be construed as to move this Court to reconsider its previous order. The Ninth Circuit requires a successful motion for reconsideration to furnish both a reason why the court should reconsider its prior decision, as well as facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Carnell v. Grimm*, 872 F.Supp. 746, 758 (D.Haw.1994).

### III.   THE COURT'S ORDER ON MARCH 12, 2010, DEPRIVED THE CLAIMANT OF DUE PROCESS OF LAW

The Court's order on March 12, 2010, granting the Government's Motion to Strike the Claim of Michael Simard is erroneous on numerous procedural and substantive grounds. In short, Nevada state law governs whether possession of currency provides a sufficient interest in said currency to confer standing. In order to establishing standing under Federal law, an unequivocal declaration combined with possession establishes standing. This is especially true at the pleading stage prior to summary judgment. The Court cannot make credibility findings

based upon the competing declarations in a motion to strike or summary judgment. The denial of any hearing on the matter, preclusion of discovery and having a proper summary judgment hearing <u>after</u> discovery deprived claimant due process of law. Finally, the filing of the motion to strike precluded the filing of a motion to suppress because no Rule 26 conference was held with counsel for the government because this motion would make the Rule 26 conference moot and the government refused to have the conference while the motion was pending.

Owners have standing to challenge forfeitures of their property, *see United States v. $122,043.00 in U.S. Currency,* 792 F.2d 1470, 1473 (9th Cir.1986). In addition, claimants who assert possessory interests in the forfeited property and provide some explanation for their possession have Article III standing to contest the forfeiture. *See United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir.1994) ("In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can *be any type of interest*, including a possessory interest.") (*emphasis added*).

In *U.S. vs. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119 (*$100,348*), cited by this Court, the claimant who asserts only a possessory interest in forfeited property has first-party standing to challenge the forfeiture. In that case, the Ninth Circuit concluded that a gratuitous bailee has a sufficient property interest in the seized property in order to confer standing to contest the forfeiture.

In a forfeiture action, the Court looks to State law to determine the "existence and extent" of a claimant's property interest. *United States v.1980 Lear Jet, Model 35A, Serial No. 277*, 38 F.3d 398, 402 (9th Cir.1994); *$100,348, supra,* at 1120. Besides claiming a possessory, legal, and equitable interest, Simard can also be a bailee under Nevada law.

N.R.S. 205.300 (4) defines the term. As used in this section, the term "bailee" means:

> "all persons with whom any money, goods or property has been deposited, all persons to whom any goods or property has been loaned or hired, all persons to whom any goods or property has been delivered, and all persons who are, either as agent, collector or servant, empowered, authorized or entrusted to carry, collect or

receive any money, goods or property of another."

At a minium, claimant has established himself as an aggrieved party under Nevada law as a bailee. Mere possession of the subject currency as a bailee or an owner provides the required standing. In the *$100,348* case, *supra*, the Court outlined the standing issue.

Under California law cited by the Ninth Circuit, a bailment is the deposit of personal property with another, usually for a special purpose. *See Windeler v. Scheers Jewelers* (1970) 8 Cal.App.3d 844, 88 Cal.Rptr. 39, 43. A bailment that arises as a personal favor is a gratuitous bailment. *See* Cal. Civ.Code § 1844 (1985) ("Gratuitous deposit is a deposit for which the depositary receives no consideration beyond the mere possession of the thing deposited."); *see also Todd v. Dow* (1993) 19 Cal.App.4th 253, 23 Cal.Rptr.2d 490, 494-95 (concluding that the storage of a rifle as a personal favor was a gratuitous bailment). A gratuitous bailee is a lawful possessor, though of a more particular kind. *Cf. United States v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1544 (11th Cir.1987) ("As a bailee, [a claimant] *has a possessory interest in the bailed currency*, and consequently *may assert a claim to the currency against anyone*, other than the bailor, who interferes with that interest.") (citations omitted and *emphasis added*).

The Ninth Circuit acknowledged the creation of a bailor-gratuitous bailee relationship in *United States v. Alcaraz-Garcia,* 79 F.3d 769, 774-75 (9th Cir.1996), albeit in the context of addressing the legal status of the owners of the seized money. The owners of $26,500 learned that Alcaraz planned to travel to Mexico to visit his family and friends. They asked Alcaraz "to deliver various sums from their savings to their respective families in Colima." *Id.* at 772. There was no indication that the owners had any close relationship with Alcaraz, that they paid him anything for his services or that he benefitted in any way from agreeing to deliver the funds. In those circumstances, the Court recognized that Alcaraz was a gratuitous bailee of the funds. *Id. at 774-75.*

In *$100,348.00, supra*, became a gratuitous bailee of Amiel's $100,000 when he accepted the funds to deliver to Amiel's sister in Israel, just as Alcaraz did when he accepted the funds to deliver to Colima. The Court held that as a gratuitous bailee, Mayzel has rights and obligations with respect to the entrusted funds. A gratuitous bailee also owes a duty to exercise "slight care" over the property. *Todd,* 23 Cal.Rptr.2d at 494. Consequently, he is liable for loss or damage to the

**MOTION FOR RECONSIDERATION**
5

1 property if he is grossly negligent in handling it. *See  Roselip v. Raisch*, 73 Cal.App.2d 125, 166
2 P.2d 340, 344 (1946).

3 In *$100,348.00, supra,* Mayzel, *by virtue* of his attendant obligations as a gratuitous bailee
4 of Amiel's $100,000, would be "punished" by a forfeiture of the entire $100,348.00, the Ninth
5 Circuit found he had standing to contest the forfeiture.

6 Even Simard's mere possession of the subject funds in his trunk to transport meets the
7 minium threshold to confer standing.  He had custody, dominion and control of all of the subject
8 property.   It is understandable that he may have attempted to minimize his connection to the funds
9 and refuse to answer questions due to the troopers restraining his liberty.  It is illogical for the Court
10 to rely upon an alleged disclaimer of almost $1,000,000 and conclude Simard has no standing to
11 contest the seizure of almost $1,000,000 from the trunk of his car.

12 Nevada law supports this position.  In the absence of any showing of a better title or right,
13 the bare prior possession of property is sufficient to indicate ownership and warrant a recovery by
14 the occupant.  *Shearer v. City of Reno* 136 P. 705, 710 (Nev. 1913).

### IV. IT IS IMPROPER FOR THE COURT MAKE CREDIBILITY FINDINGS TO DENY THE MOTION AT THIS EARLY STAGE

16 As the party seeking to intervene in an in rem forfeiture action, a claimant bears the burden
17 of establishing his own constitutional standing at all stages in the litigation. *See United States v.*
18 *$38,000* in U.S. Currency, 816 F.2d 1538, 1543-44 & n. 12 (11th Cir.1987); *see generally Lujan*
19 *v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  However,
20 at the pleading stage, a claimant satisfies this burden by alleging a sufficient interest in the seized
21 property, such as an ownership interest, some type of lawful possessory interest, or a security
22 interest. *See, e.g.*, *Rodriguez-Aguirre*, 264 F.3d at 1204; *United States v. $515,060.42 in U.S.*
23 *Currency*, 152 F.3d 491, 498-99 (6th Cir.1998).

24 Here, the declaration by Michael Simard overwhelmingly satisfies this burden and to strike
25 his answer PRIOR TO summary judgment and before any discovery was conducted was clearly
26 erroneous and justifies relief from the Court's order.

27 At the summary judgment stage, a claimant must prove by a preponderance of the evidence
28 that he has a facially colorable interest in the res such that he would be injured if the property were

forfeited to the United States; otherwise, no case or controversy exists capable of federal court adjudication. See *Rodriguez-Aguirre*, 264 F.3d at 1206; *United States v. Cambio Exacto*, S.A., 166 F.3d 522, 527-28 (2d Cir.1999). Although a claimant must make an initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest. *See Rodriguez-Aguirre*, 264 F.3d at 1204; *United States v. $577,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir.2002) ("[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest,' not whether he ultimately proves the existence of that interest." (quotations omitted)).

### V. THIS MATTER IS COMPLETELY CONTROLLED BY THE CASE OF
*U.S. v. $148,840.00 in U.S. Currency* 521 F.3d 1268, 1273 -1278 (10th Cir.,2008)

In the above case, the government contended that in the absence of "some evidence and explanation of his interest in the res," claimant Austin had failed to prove his Article III standing to challenge the forfeiture. The government argued that in determining standing, it is not enough for a claimant to say, "That money you took from me is mine." A claimant must prove more, said the government, "or it is ours"-without having to establish any of its own rights to the asset.

According to the government's position raised in *$148,840.00, supra*, a claimant may not merely claim the property as his and couple his physical possession of the currency with that claim, he must also present additional evidence, such as an explanation of how he came into possession of the money, the nature of his relationship to it, or the story behind his control of it. Without such evidence, went the argument in that case, the claim amounts to nothing more than "naked, unexplained possession." (This is the exact argument the government made in this case)

The claimant in *$148,840.00, supra,* argued that the cases invoked by the government did not support the conclusion that he lacked Article III standing. He urged that his categorical claim of personal ownership of the funds (as to opposed to a claim of possession on behalf of another), combined with the undisputed evidence that the money was in his possession and control when seized, are together sufficient evidence to establish his standing.

The 10th Circuit very recent held that, "As we view the matter, Austin [claimant] has the better of the two arguments." *Id.* at 1273-74.

The *$148,840.00 Court, supra,* stated that,

> The fundamental flaw in the government's logic lies in its characterization of this forfeiture case as one of mere possession, rather than one of ownership. In the standing context, *this distinction makes all the difference*. As our sister circuits have recognized in other forfeiture cases, there is an important difference, for standing purposes, between one who claims to be the owner of property and one who claims to be a mere possessor of it. Compare *United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1112-13 (5th Cir.1992), and *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057-58 (9th Cir.1994), superseded by statute on other grounds, with *United States v. $321,470 in U.S. Currency*, 874 F.2d 298, 303 (5th Cir.1989). The type of interest claimed dictates the type of evidence required to establish standing. *See $191,910.00 in U.S. Currency*, 16 F.3d at 1058. The case law in this area reveals the existence of at least three relevant property interests, and the nature of proof needed to demonstrate standing turns on which of these distinct interests has been claimed. These interests include: (1) ownership interests; (2) explained, lawful possessory interests (e.g., that of a bailee); and (3) unexplained or unlawful possessory interests. See id. at 1057-58.

In cases in which a person has asserted an ownership interest like in our case as to currency, courts have not required the claimant to present the type of explanatory evidence urged by the government to establish his or her standing. *See $38,570 in U.S. Currency*, 950 F.2d at 1112; see also *$191,910.00 in U.S. Currency*, 16 F.3d at 1058 ("[A] simple claim of ownership will be sufficient to create standing to challenge a forfeiture."); cf. *Rodriguez-Aguirre*, 264 F.3d at 1206 (recognizing, in a Fed.R.Crim.P. 41(e) case, that "proof of ownership, as opposed to lawful possession, is ... not required [to establish Article III standing] ... even at a later stage in the proceedings such as a summary judgment or trial"). Rather, "courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *United States v. U.S. Currency, $81,000, etc.*, 189 F.3d 28, 35 (1st Cir.1999). The required ownership interest can be demonstrated in a variety of ways, "including showings of actual possession, control, title and financial stake." *United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 399 (8th Cir.2000) (quotation omitted); accord, *$148,840.00, supra* at 1275.

The Fifth Circuit's decision in *$38,570 in U.S. Currency, supra* is also instructive. There, the court held that a claimant who asserted an ownership interest had constitutional standing to challenge the forfeiture of currency seized from a car that he was driving. *Id.* at

**MOTION FOR RECONSIDERATION**
8

1113. Although the court stated that "a bare assertion of ownership in the res, without more, is inadequate to prove an ownership interest sufficient to establish standing," it *$100,348* also concluded that such an assertion, when coupled with evidence of the claimant's involvement with the res, is enough to confer Article III standing on the claimant. *Id.* at 1112; *see also Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir.2000) (recognizing that "an unsupported assertion is insufficient to establish standing" when the evidence adduced shows only a that a claimant "might have been involved" with the defendant res).

Similarly, in *$191,910.00 in U.S. Currency*, the Ninth Circuit concluded that a claimant who was found in possession of a large amount of currency, and who had asserted at least a partial ownership interest in the defendant res, had Article III standing to challenge the forfeiture. (16 F.3d at 1058). The court based its conclusion that the claimant had standing on the following reasoning:

Here, [the claimant] clearly described the interest he asserted in the money-he claimed that he owned some of the money and that he was carrying the rest for a client. He did not disclaim knowledge of the money he was carrying, and he did ask for a receipt from the police. His was certainly more than the kind of naked, unexplained claim of possessory interest held insufficient in Mercado. It was a repeated, colorable claim of possessory and ownership interests which, combined with the fact that the money was taken from Morgan's possession, was more than sufficient to support standing.

Id. at 1058; cf. $557,933.89, More or Less, 287 F.3d at 79 n. 10 (finding standing because a claimant "submitted a verified claim that he was the owner of the funds").

Moreover, the Ninth Circuit held that, given the claimant's assertion of ownership, it was of no moment that he invoked his privilege against self-incrimination at his deposition when asked to explain his interest in detail. *$191,910.00 in U.S. Currency*, 16 F.3d at 1057, 1058 n. 13. It was enough that he claimed to own the money taken from his possession. *Id.*

After Mr. Simard was released from police custody, he aggressively has made a claim of ownership knowing his liberty was not at risk any longer.

In *$148,840.00, supra*, the Court stated that,

> \*\*\*our society is one that values both personal property rights and the appropriate judicial resolution of disputes involving those rights. As we view it, the government cannot prevent every person unwilling to completely explain his relationship to property that he claims to own, and that is found in his possession and control, from merely contesting a forfeiture of that property in court. It may well be that forfeiture ultimately will prove appropriate, but we find it obvious that such a claimant risks injury within the meaning of Article III and thus may have his day in court. We thus hold that when a claimant has asserted an ownership interest in the res at issue and has provided some evidence tending to support the existence of that ownership interest, the claimant has standing to challenge the forfeiture. **In light of the foregoing, we turn to a consideration of whether Austin's unequivocal claim of ownership over the currency seized, coupled with the undisputed evidence that the money was taken from his possession and control, are together sufficient to confer constitutional standing on this record.**

*Id.* at 1277.

In *$148,840.00, supra*, the issue arose at a deposition - - after formal discovery commenced. As stated above, to dismiss this in a 12(b) setting closes the court's house door to the claimant. In *$148,840.00, supra*, the Court stated,

> Like the claimants in $38,570 in U.S. Currency and $191,910 in U.S. Currency, Austin has stated that he is the owner of the currency at issue. At his deposition, he repeatedly testified that the money was his. Additionally, the government does not dispute that Austin exercised some form of dominion and control over the money at the time the officers recovered it from his rental car. That he invoked the Fifth Amendment when asked to explain how he came into ownership changes neither of these two dispositive facts.

Finally, in *$148,840.00, supra*, the Court ruled that at the summary judgment stage, the district court was required to view that testimony in the light most favorable to Austin, the non-moving party, and therefore was obliged to accept Austin's claim of ownership in determining whether Austin had met his burden of proving standing by a preponderance of the evidence. *See 1998 BMW "I" Convertible*, 235 F.3d at 400 (holding that where there were "disputed factual issues and witness credibility determinations to be resolved," summary judgment against a civil forfeiture claimant based on lack of standing was inappropriate).

Finally, the Court held that because Austin's assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that Austin was driving, Austin had established constitutional standing at that stage of the litigation. He has both made a claim of ownership over the currency and provided some evidence tending to substantiate that claim, as he had obvious possession and control over the currency when it was taken. *See*

1  *$38,570 in U.S. Currency*, 950 F.2d at 1113; *$191,910.00 in U.S. Currency*, 16 F.3d at 1058.

2  Here, claimant Simard had possession and made an unequivocal claim to the currency. (*Simard Decl*). **This is enough for standing under *$148,840.00, supra* and at this early stage of the pleadings**.

Doubts as to the credibility of the movant's affiants or witnesses may lead the court to conclude that a genuine issue exists. Indeed, as the Advisory Committee states in its Note to the 1963 amendment of Rule 56(e): "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Assessing evidentiary weight and credibility are not ordinarily consistent with a ruling on a summary judgment motion. *Nyari v. Napolitano* 562 F.3d 916, 922 (8th Cir. 2009)

In this case, by ruling on the affidavits as the Court did in its order, it made credibility findings. This was improper.

### VI. THE CLAIMANT WAS PRECLUDED FROM BRINING A SUPPRESSION MOTION BECAUSE NO RULE 26 EXCHANGE OCCURRED OR A RULE 16 CONFERENCE DUE TO THE PENDING 12(b) MOTION TO DISMISS

The motion before the magistrate stayed the rest of the proceedings. It was impossible for counsel with the benefit of any discovery to bring a suppression motion and it is simply unfair the Court mentioned it in its opinion that none was brought. The motion to strike was pending for seven months. Both parties - - especially the government - - wanted to wait for the outcome of that motion.

DATED this 17th day of March, 2010.

PALAZZO LAW FIRM
A PROFESSIONAL CORPORATION

/s/ T. Louis Palazzo, Esq.
_____

LAW OFFICES OF RONALD RICHARDS
& ASSOCIATES, A.P.C.

/s/ Ronald Richards, Esq.
_____

Attorneys for Michael Simard

**MOTION FOR RECONSIDERATION**
11